UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHEILA S.[1], | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 3:20-CV-854-MGG ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Sheila S. ("Ms. S") seeks judicial review of the Social Security Commissioner's decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act and Supplemental Security Income ("SSI") benefits under Title XVI. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

**OVERVIEW OF THE CASE**

Ms. S applied for DIB and SSI on August 13, 2018. In her application, she alleged a disability onset date of February 13, 2014. Ms. S's application was denied initially on January 7, 2019, and upon reconsideration on March 5, 2019. Following a hearing on

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

October 7, 2019, the Administrative Law Judge ("ALJ") issued a decision on November 19, 2019, that affirmed the Social Security Administration's denial of benefits. The ALJ found that Ms. S suffers from the severe impairments of scoliosis, status-post surgery of the thoracic and lumbar spine, obesity, major depressive disorder, and generalized anxiety disorder. The ALJ found that none of Ms. S's severe impairments, nor any combination of her impairments, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Further, the ALJ found that Ms. S has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain additional limitations. Ms. S has past relevant work as a youth care worker. In view of Ms. S's RFC, the ALJ found that Ms. S is unable to perform past relevant work. However, the ALJ concluded, based on the testimony of the vocational expert, that Ms. S has the ability to meet the requirements for employment as a checker, routing clerk, or mail sorter. Based upon these findings, the ALJ denied Ms. S's claim for DIB and SSI.

### I.   DISABILITY STANDARD

In order to qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if he or she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is doing substantial

gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520; 416.920[2]. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

## II. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-

---

[2] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson ex rel. J.D. v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to her conclusions, the ALJ must at least provide a glimpse into the reasoning behind her analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

### III. ANALYSIS

#### A. ALJ's Consideration of Therapist Gregory's Opinion

Ms. S argues that the ALJ erred by failing to properly assess the Mental Medical Source Statement of Licensed Clinical Social Worker Michelle Gregory[3] ("Therapist Gregory") by discounting it for its internal consistency, rather than weighing it based on its consistency with the record as a whole and thus the RFC is not supported by

---

[3] The parties do not dispute that as a Licensed Clinical Social Worker, Gregory qualifies as a "medical source" under the regulations. Moreover, "the ALJ must consider a medical opinion offered by a medical source, regardless of whether the medical source is an acceptable medical source." *Nelson v. Kijakazi*, No. 20-CV-1878-SCD, 2022 WL 795951, at *7 (E.D. Wis. Mar. 16, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c). Therefore, Therapist Gregory's opinion is part of Ms. S's record to be considered by the ALJ. Compare *Nelson*, 2022 WL 795951, at *7 (finding a licensed physical therapist to be a "medical source" under the regulations).

4

substantial evidence. Ms. S visited Therapist Gregory for help with her depressive and anxiety disorders. Two months into the treatment relationship Therapist Gregory opined in her Mental Medical Source Statement that Ms. S is "unable to meet competitive standards" and has "no useful ability to function" in several categories. She further indicated that Ms. S would have difficulty tolerating stress and would miss more than four days of work per month due to her impairments or treatment. [DE 16 at 24]. While Gregory did note that Ms. S presented with symptoms of anxiety and depression and suffered moderate stress levels, she found Ms. S's mental status to be fully normal in numerous mental status examinations she administered.

As part of her Step Three Listing analysis before crafting Ms. S.'s RFC, the ALJ concluded that Ms. S has a "mild" limitation in her ability to understand, remember, or apply information and in her capacity to adapt or manage herself; and that she experiences a "moderate" limitation in her ability to concentrate, persist, or maintain pace and in her ability to interact with others. [DE 16 at 25]. In assessing Ms. S's RFC, the ALJ noted that, while Therapist Gregory opined that Ms. S is "unable to meet competitive standards" and has "no useful ability to function" in a variety of function categories, her opinion contradicted her treatment records indicating that at every meeting, Ms. S' mental status examination showed fully normal functioning. Additionally, the ALJ noted that Ms. S is able to manage her household independently, care for her homeschooled children, and serve as an Uber driver at times. [*Id.* at 24].

In determining the RFC, the ALJ also cited other mental status examinations performed by Nurse Practitioner Rhonda Hoskins, who Ms. S sees for medication

5

management at the same facility where she sees Therapist Gregory. In each of NP Hoskins' examinations, she documented abnormalities suggesting reduced functioning. [*Id.* at 25]. Apart from NP Hoskins examinations, however, the ALJ noted the record otherwise contains fully normal mental status examinations.

Based on her Step Three and RFC analysis, the ALJ defined Ms. S's RFC as being able to perform light work with the following limitations:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except: she can occasionally climb, balance, stoop, kneel, crouch, or crawl. She must avoid concentrated exposure to extreme cold, wetness, vibration, moving machinery, slippery uneven surfaces, and unprotected heights. She is able to work with an option to sit or stand, changing positions no more frequently than every 30 minutes, while remaining on task. She is able to perform work that can be learned in 30 days, or less, with simple routine tasks. She is able to remain on task in two-hour increments. She is able to tolerate occasional interaction with the coworkers, supervisors, and the general public.

[DE 16 at 20].

A claimant's RFC is the most activity that he can engage in a work setting despite the physical and mental limitations that arise from her impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p; *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009). This assessment is "based on all of the relevant evidence in the case record," including medical source statements from a claimant's treating source and other medical sources. SSR 96-8p. Ms. S argues that the RFC is not supported by substantial evidence because the ALJ failed to properly address Therapist Gregory's opinion by only considering its consistency with her own records and Ms. S's activities, rather than the record as a whole.

6

When considering the opinion of a medical source, including treating providers, and determining the persuasiveness thereof, an ALJ must consider supportability, consistency, relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1-5). When the ALJ's RFC determination conflicts with an opinion from a medical source, the judge still must explain why the opinion was not adopted. SSR 96-8p. An ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford*, 227 F.3d at 870. One such valid reason for finding an opinion less persuasive is where a treating physician's opinion is internally inconsistent or inconsistent with the rest of the medical record. *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) (internal citations omitted).

Here, the ALJ considered the opinion authored by Therapist Gregory, and upon determining that it was both internally inconsistent and inconsistent with the rest of the medical record, found the opinion to hold little weight. The ALJ noted that although Gregory had a treatment relationship with Ms. S and was specialized, her opinion on Ms. S's functional capacity did not reflect her own treatment notes. Gregory opined that Ms. S is "unable to meet competitive standards," has "no useful ability to function" in a variety of categories, would have difficulty with stress tolerance, and would likely miss more than four days per month due to her impairments or treatment. [DE 16 at 24]. However, in the two-month treatment relationship between Gregory and Ms. S, Gregory determined in every mental status examination that Ms. S was fully normal. [*Id.*]. While Gregory did note that Ms. S presented with symptoms of anxiety and depression and suffered moderate stress levels, none of this was described in detail, nor

7

incorporated into the mental status examinations. Presented as such, the ALJ determined her records did not include any notations rising to the level of "no useful ability to function" that Gregory opined was Ms. S's status. Accordingly, the ALJ supported her conclusion that Gregory's opinion was internally inconsistent based on substantial evidence of fully normal status examinations and notes that did not detail a lack of useful ability to function.

Ms. S argues though that even if Therapist Gregory's opinion is internally inconsistent, the ALJ erred by failing to consider the consistency of Gregory's opinion with other sources. When considering medical opinions, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In addition to considering consistency across medical opinions, an ALJ will also consider the internal consistency of an opinion and in either scenario may discount an opinion where it is incongruent. See *Prill*, 23 F.4th at 751; *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

Here, in addition to her independent consideration of Therapist Gregory's opinion, the ALJ acknowledged the examinations of Ms. S by other healthcare providers. The ALJ noted that NP Hoskins performed several mental status examinations, whereupon she described Ms. S's status as "flat, depressed, and disheveled." [DE 16 at 25]. The ALJ also recognized that one other primary care physician once described Ms. S as presenting with a flat affect. [*Id.*]. However, the ALJ

8

noted the record otherwise contains fully normal mental status examinations by other doctors over the course of four years, from May 14, 2015, to September 16, 2019. [*Id.*]. Accordingly, the ALJ concluded that because some treatment providers did cite abnormalities, Ms. S did have a reduced functional capacity. However, the ALJ determined that a reduction to the extent opined by Therapist Gregory was not warranted because the rest of the record showed a fully normal mental status. Thus, the ALJ considered the entirety of the record and supported her RFC determination with substantial evidence.

> B.      **ALJ's Consideration of the Ms. S's Life Stressors**

Ms. S also contends that the ALJ improperly "played doctor" when she noted that Therapist Gregory focused more on Ms. S's situational life stressors in their sessions than her mental disorders. Ms. S argues that the ALJ erred by criticizing Gregory's treatment notes and discounting Gregory's opinion based on the content of those notes.

While it is the responsibility of the ALJ to making findings "about what the evidence shows," 20 C.F.R. § 404.1520b, "playing doctor" is "a clear no-no." *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). An ALJ plays doctor where he "substitute[s] his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870. It is not the role of the ALJ to make her own independent medical findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Here, the ALJ did not make any independent medical findings when she mentioned the content of Therapist Gregory's notes. The ALJ simply noted that the

9

content of Ms. S's and Gregory's sessions seemed to focus more on situational stressors than on managing her organic mental disorder. [DE 16 at 24]. The ALJ did not "play doctor" and determine that Ms. S lacked a mental disorder or otherwise, but instead simply summarized the content of her meetings with Gregory. Even if this were somehow error and impacted the ALJ's determination of the persuasiveness of Gregory's opinion, the ALJ still provided substantial evidence for her discounting of Gregory's findings as illustrated above and did not merely substitute her own opinion for that of Gregory.

### C. Ms. S's Daily Activities

Ms. S further contends the ALJ erred by relying on Ms. S's ability to engage in sporadic daily activities to find Therapist Gregory's opinion inconsistent and less persuasive. Critical differences exist between performing activities of daily living and working a full-time job. For instance, when performing activities of daily living, individuals have more flexibility and can secure assistance from others to complete their intended tasks unlike when they work full-time and must meet a minimum standard of performance. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). As a result, courts have cautioned against an exaggerated reliance on the ability to perform daily activities but still finds information about daily activities relevant in evaluating conflicting evidence about a claimant's limitations. *Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021) (citing *Bjornson*, 671 F.3d at 647 (collecting cases)). Where the opinion of a doctor is contradicted by objective medical evidence and the claimant's own testimony regarding their abilities, the ALJ is entitled to discount it. *See id.* at 102.

Here, the ALJ, as discussed above, provided several reasons to support finding Therapist Gregory's opinion internally inconsistent with her own notes and with the rest of the medical record. Ms. S's own testimony that she independently manages her household, takes care of her homeschooled children, and sometimes works as an Uber driver is simply additional evidence that the ALJ was obligated to consider and permitted to cite to as a reason to discount a medical opinion. [DE 16 at 24].

D.      **Reliance on Non-Examining Consultants**

Ms. S also argues that the ALJ erred by relying on the opinions of non-examining consultants to support her RFC assessment citing *Oakes v. Astrue*, 258 F. App'x 38, 45 (7th Cir. 2007) and *Gudgel v. Barnhart*, 345 F.3d 467 (7th Cir. 2003) in support. As stated in *Oakes*, 258 F. App'x 38 and *Gudgel*, 345 F.3d, contradictory opinion evidence from a non-examining consultant alone is insufficient evidence to reject a treating physician's opinion. Under 20 C.F.R. § 404.1513a(b)(1), non-examining state-agency consultants are "highly qualified and experts in Social Security disability evaluation," and their opinions are to be considered by the ALJ. *See also Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022); *Stewart v. Kijakazi*, No. 1:20-CV-44-TLS, 2021 WL 5405146, at *3 (N.D. Ind. Nov. 18, 2021).

The ALJ here found the state-agency consultants' opinions that Ms. S's functional capacity is greater than that articulated by Therapist Gregory persuasive based upon their extensive program knowledge and the general consistency of their findings with the record despite their lack of treatment relationship with Ms. S. [*Id.* at 25-26]. The ALJ also noted that the consultants cited from the record to support their findings [*Id.*].

Conversely, as aforementioned, the ALJ discussed how Gregory's opinions were contradictory internally and across the record. Accordingly, having considered the opinions of the state-agency consultants and further supported her discounting of Gregory's opinion based on is inconsistencies, the ALJ did not rely solely on non-examining consultants to contradict Therapist Gregory's opinion. *See Oakes*, 258 F. App'x at 44–45; *Gudgel*, 345 F.3d at 470.

### E. Consideration of Global Assessment of Functioning Scores

Lastly, Ms. S argues that it was error for the ALJ to find the Global Assessment Functioning[4] ("GAF") scores assigned to Ms. S by Therapist Gregory persuasive. Courts have recognized that GAF scores are of limited usefulness in assessing the severity of a mental impairment, *see e.g. Doyle v. Astrue*, No. 1:11-CV-00045, 2012 WL 489146, at *6 (N.D. Ind. Feb. 14, 2012), and that particular diagnostic tool has been abandoned completely in the updated Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM"). However, GAF scores are a piece of evidence in the record that the ALJ may consider in formulating a claimant's RFC. *Adams v. Astrue*, No. 1:06-CV-393 RM, 2009 WL 1404675, at *4 (N.D. Ind. May 18, 2009) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

Here, the ALJ expressly recognized that GAF scores are of limited use, stating that they provide merely a snapshot, and noted that they have been abandoned in the updated DSM. [DE 16 at 24]. However, as the GAF scores are a documented treatment

---

[4] American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders Text Revision 34* (4th ed. 2000). A GAF score is a numerical evaluation, with a range of 0 to 100 of an individual's "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Id.*

record of Ms. S's health impairments and are consistent with the rest of the record's indication of a moderate functional loss, the ALJ found them to be "somewhat persuasive," despite their limited use as an assessment tool. [*Id.*]. Accordingly, the ALJ did not err in her consideration of Ms. S's GAF scores as part of the RFC determination.

IV. CONCLUSION

For the reasons stated above, the ALJ's decision is supported by substantial evidence and is therefore **AFFIRMED**.

**SO ORDERED** this 16th day of August 2022.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
